In the Matter of JACOB KLEIN, an Attorney, Respondent.

First Department, February 14, 1930.

*Isidor J. Kresel* of counsel [*William Dean Embree* with him on the brief], for the petitioners.

*Jacob Klein* [*Harold R. Medina* of counsel], respondent in person.

DOWLING, P. J.   The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, First Department, on March 15, 1909.

The petition charged the respondent with misconduct as an attorney at law in the solicitation of personal injury cases, setting forth specific instances of such solicitation.   In addition it was charged that respondent had failed to comply with the terms of a court order in an infant's action and converting to his own use part of the money required to be paid over to the guardian.   After respondent answered, denying the charges of misconduct set forth in the petition, the matter was referred to a referee to take testimony in regard to the said charges and to report the same with his opinion thereon ·to this court.   The referee having duly reported, the petitioners now move for such action herein as this court may deem just and proper.

The learned referee found that the charges of the petitioners as to the alleged failure of the respondent to comply with the terms of a court order and as to the conversion of moneys collected in behalf of an infant have not been sustained.   The petitioners accept this finding.

The referee found that the charges of solicitation had been sustained in four instances, to wit, in the Saunders, Miraglia, Snowden and Kopp cases.

Mrs. Catherine Saunders testified that her son Michael was injured in June, 1924. The same day or the next day two men came to the house and represented themselves as coming from respondent's office, and they talked to her and her husband for about an hour, and the Saunders decided that they would give them the case. They had never seen these men before. Patrick Saunders testified that when he came home the evening of the day when his son was injured there was a young man there trying to get the case for respondent; this young man waited until another man came. This second man said he was Mr. Klein and that he wanted the case. Saunders signed the papers for him and gave him the case. Respondent's testimony is that a telephone call came to his office asking him to call at the Saunders home on Lexington avenue, that he went up there, was informed that a neighbor living in the neighborhood had suggested his name and that he had the retainer signed and that he noted some particulars about the case on the back of the retainer. Respondent emphasizes the fact that the retainer is entirely in his own handwriting. Mrs. Saunders denies that the respondent was at her house. The cross-examination of Mrs. Saunders might indicate that the retainer was actually signed in respondent's office as he claims.

The respondent's version of his retention in the Miraglia case is that Mr. Miraglia first retained a lawyer named Dwyer, that he later became dissatisfied with Dwyer and came to the respondent's office " as a result of some Italian client of mine who had recommended these people to me." One Scelza testified for respondent to support this version. Speaking of the Scelza testimony, the referee said: " I am not inclined to give much weight to this testimony." We have endeavored to read the Miraglia testimony as respondent would have us, but we think notwithstanding the limitations in their use of the English language they made it clear that when their son was injured in October, 1925, some man came to their house the day of the accident, and came back again in the evening after Miraglia had returned from work; that he wanted the case and told them that " the cop " sent him over. This man said he represented respondent and Miraglia signed for respondent. Later Miraglia turned the case over to Dwyer. Thereafter, the man who came to their home the night of the accident came again and persuaded them to return the case to respondent. They made it quite definite that respondent was the first to be retained, and he was so retained as the result of the efforts of the man who came to them the day of the accident; that this man was a stranger to them, as was respondent.

In the Snowden case, Quilla R. Snowden, a negro residing at 149 West One Hundred and Fortieth street, testified that in October,

1924, he injured his left foot by tripping on a piece of lumber at One Hundred and Forty-third street and Lenox avenue; two or three days after the accident, a man, whom he was positive was not respondent, and whom he had never seen nor heard of before, came to his house and asked if he had gotten an attorney; Snowden said "no," and the man told him in reference to respondent that he would take the case on a "fifty fifty" basis, saying that was what was offered to other people; this man asked Snowden to sign a paper he had there, which Snowden did. Later Snowden phoned respondent and went to his office, and the case was settled. Respondent testified to his contact with a Dr. Harding in connection with some charitable work, and the latter's expression of good will toward him. Respondent testified: "Subsequently I received a phone call, in fact I was not in the office; I do not recall just the time of the day, but I know a call came in and said Dr. Harding had phoned that a man had been injured on 140th Street, this man Snowden, and I thereupon went there in the evening of the following day, October 21st, and I met Mr. Snowden and told him who I was, and who sent me there, and he said he knew Dr. Harding, and I asked him the facts of the case, and he told me the facts of the case and I thereupon wrote out a retainer and took some skeleton details for information." Dr. Harding's testimony is that he gave respondent's name to an unidentified woman patient who asked him if he knew of a good lawyer to take charge of the case of a friend of hers. There is no definite connection between Dr. Harding's patient and Snowden. Snowden, on redirect examination, testified that at the time of the accident, and for some time thereafter, his wife was out of the city and that he did not request anybody to get him a lawyer. The Harding testimony is indefinite enough to be applicable to almost any case.

The testimony in the Kopp case is that Kopp was induced to sign a retainer of the respondent while he was in a dizzy condition the day following his accident. Respondent testified he gave all the papers in the case back to Kopp and hence was at a loss to explain how the case came to him. Evidently there was some ill feeling between Kopp and respondent. Kopp withdrew the matter from respondent and had respondent release his attorney's lien. This apparent antagonism does not destroy the force of Kopp's testimony.

It is argued that the isolated instances of some unidentified person urging prospective clients in personal injury cases to retain respondent are not sufficient to establish solicitation on behalf of respondent. The record shows that there was a seeking out of those with claims. Respondent profited by such action. He cannot accept the benefit and deny the responsibility. The lack of proof of a greater number of solicited cases affects only the

extent to which he is to be held accountable. The explanation offered as to the source of these cases is similar to that offered in many of these disciplinary proceedings recently before us. While plausible, this explanation is not convincing. While a continued course of conduct as to solicitation has not been shown, the instances which have been proven must receive the disapproval of this court and he should be censured therefor.

MERRELL, FINCH, McAVOY and PROSKAUER, JJ., concur.

Respondent censured.